


Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) CHAPTER 7 |
| GLENN RICHARD KING, JR., | ) |
| | ) CASE NO. 10-63468 |
| Debtor. | ) |
| | ) ADV. NO. 10-6099 |
| | ) |
| KING'S WELDING & FABRICATING, INC., | ) |
| | ) |
| Plaintiff, | ) JUDGE RUSS KENDIG |
| | ) |
| v. | ) |
| | ) |
| GLENN RICHARD KING, JR., | ) **MEMORANDUM OF OPINION** |
| | ) **(NOT FOR PUBLICATION)** |
| Defendant. | ) |

On March 29, 2011, defendant Glenn Richard King, Jr. ("Rick King") filed a motion for summary judgment. The motion is now before the court.

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I) and (O). Venue is appropriate under 28 U.S.C. § 1409.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

# BACKGROUND

King's Welding is a corporation located in Mechanicsville, Ohio. Glenn Richard King ("Dick King") now is its president and owner, and Rick King is a former employee and vice president. Rick King is Dick King's son. Portions of the deposition of Florence Jane King ("Jane King") indicate that this was not the ownership composition at the time of the relevant events, but the parties have not made this an issue.

All six counts of the complaint, filed on October 14, 2010, revolve around the same nucleus of facts. The complaint alleges that while employed at King's Welding, Rick King redirected the business of King's Welding's largest client, PCC Airfoils, to his own company, ANJ Contracting, LLC ("ANJ Contracting"). Rick King allegedly utilized King's Welding's trade secrets while soliciting PCC Airfoils' business and while operating ANJ Contracting. The complaint also alleges that Rick King embezzled money from King's Welding by selling scrap metal dust to Alloy Metal Sales and scrap metal to an unspecified other. In connection with the sales, he allegedly directed Alloy Metal Sales to send payments to his wife, Julie King.

The six counts of the complaint are as follows: Count I alleges breach of fiduciary duty and breach of employment contract; Count II alleges violation of the Uniform Trade Secrets Act, Ohio Rev. Code §§ 1333.61–13331.89; Count III alleges "tortuous [sic]" interference with a business relationship; Count IV alleges conversion; Count V alleges fraud and Count VI is a demand for attorney fees. Counts I through V also allege that the resulting damages are non-dischargable debts pursuant to 11 U.S.C. § 523(a)(2), (4) and (6). Rick King now seeks summary judgment on all six counts.

In his answer and motion for summary judgment, Rick King tells a different story. According to his filings, he was the workhorse behind King's Welding and the primary driver of the company's success. In 1973, during a 30-day leave from the Navy, Rick King converted his parents' horse barn into the welding shop where King's Welding was started. After leaving the Navy, Rick King began working full time at King's Welding under the assumption that he would some day obtain ownership. At some point, he became King's Welding's vice president. In 1995, Dick King retired from active management of King's Welding. From 1995 to 2004, Rick King allegedly ran all aspects of the business. During those years, he allegedly initiated King's Welding's relationship with PCC Airfoils. During that time, King's Welding's income grew from $500,000 in 1995 to $2,248,313 in 2004.

Rick King alleges that, in 2004, Dick King returned to active management of the business. Upon his return, he allegedly fired key employees and verbally abused others, causing them to quit. As a result, King's Welding no longer had enough employees to maintain PCC Airfoils as a client for the type of work done at Plant I, primarily welding and fabricating. This jeopardized the PCC Airfoils relationship. According to Rick King, he formed ANJ Contracting in an attempt to salvage his family's relationship with PCC Airfoils.

2

On October 5, 2005, King's Welding filed suit against Rick King in the Carroll County Court of Common Pleas as case number 05-CVH-24422. The amended state court complaint contained substantially the same counts as the complaint that initiated this adversary proceeding. On February 21, 2008, King's Welding filed a motion for summary judgment. On April 18, 2008, the state court issued a six-page order granting summary judgment with regard to conversion and breach of duty of good faith and denying with regard to the other claims. The case was set for trial in the summer of 2008 but the trial was not commenced. The case never came to trial in the nearly two years and four months thereafter up to the filing of Rick King's petition.

On August 11, 2010, Rick King filed a bankruptcy petition, which stayed the state court proceedings pursuant to 11 U.S.C. § 362. On December 6, 2010, King's Welding filed a motion requesting that the court remand this proceeding to state court. On March 29, 2011, the court entered an order denying the motion for remand, in no small part due to inaction in the state court.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a), made applicable to this proceeding through Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970). Summary judgment is not appropriate if a material dispute exists over the facts, "that is, if evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment procedure has been shaped by a series of Supreme Court cases, especially the trilogy of Anderson; Celotex Corp. v. Catrett, 477 U.S. 317 (1986) and Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). These cases have created a procedure of shifting burdens between the movant and the nonmovant as reflected in Rule 56.

The movant bears the initial burden on a motion for summary judgment. To meet this burden, the movant may point out the "absence of any factual support for the plaintiff's claim." Celotex, 477 U.S. at 322. *See also* Fed. R. Civ. Pro. 56(c)(1)(B). Or the movant may attempt to show that a legally dispositive fact is not in dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. Pro. 56(c)(1)(A).

The burden then shifts to the nonmovant. In defeating a motion for summary judgment, a plaintiff cannot merely rest on the pleadings. First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968). Instead, the nonmovant must dispute the movant's assertion by pointing

3

out facts in the record which support the nonmovant's claim. Celotex, 477 U.S. at 322. The facts pointed out must be "material" meaning that, if proven, they would form a basis for relief under the governing law. Anderson, 477 U.S. at 248. Furthermore, the nonmovant's showing must be "genuine" meaning that it must show that there is more than "metaphysical" doubt as to the material facts. Matusushita, 475 U.S. at 586.

Finally, the nonmovant must point out facts with particularity. "Importantly, the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479–80 (6th Cir. 1989)) (internal quotations omitted). *See also* Fed. R. Civ. Pro. 56(c)(3). Put differently, it is not the court's obligation to hunt in the tall grass of the parties' filings for the truth. The court must grant the motion for summary judgment unless the nonmovant meets its burden.

## LAW AND ANALYSIS

*A. The Effect of the State Court Judgment*

In their arguments, both parties cite to the state court's order granting partial summary judgment. King's Welding argues that this court must deny summary judgment on the trade secret and fraud counts because the state court denied both parties' motions for summary judgment as to these issues. Meanwhile, Rick King argues that the state court's findings of fact are somehow inconsistent with a finding that Rick King misappropriated King's Welding's trade secrets.

Thus, as a preliminary matter, the court considers whether the state court order is res judicata in this proceeding. Res judicata can be of two kinds: issue preclusion and claim preclusion. Taylor v. Sturgell, 553 U.S. 880, 892 (2008). These doctrines promote judicial economy by preventing parties from relitigating issues that have already been resolved on the merits. Id.

"The doctrine of issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." Glidden Co. v. Lumbermens Mut. Cas. Co., 861 N.E.2d 109, 118 (Ohio 2006) (internal quotes and citations omitted). State law dictates whether a state court judgment should be afforded issue-preclusive effect. Ed Schory & Sons, Inc. v. Francis (In re Francis), 226 B.R. 385, 388 (B.A.P. 6th Cir. 1998). In Ohio, issue preclusion is triggered only by "final judgment on the merits." Sill v. Sweeney (In re Sweeney), 276 B.R. 186, 189 (B.A.P. 6th Cir. 2002).

The Ohio Supreme Court has held that orders granting partial summary judgment are not

4

issue preclusive because they are not final, appealable judgments on the merits. Glidden, 861 N.E.2d at 118. Thus, issue preclusion does not apply in this case.

Under the doctrine of claim preclusion, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Holzemer v. Urbanski, 712 N.E.2d 713, 716 (Ohio 1999) (internal quotations and citations omitted). *See also* Taylor, 553 U.S. at 892. Once again, the state court's order granting partial summary judgment is not a final, appealable judgment. Plaintiff's discussion of the law at pages 16 through 19 of its response does not argue the critical point of whether the state court judgment was final. In fact, at page 17 of the response it is noted that there must be a final judgment. Thus, res judicata does not apply in this case, and the court decides the motion for summary judgment beginning with a blank slate and solely with the record provided in this court.

*B. The Unusual Status of the Case*

This case arises in bankruptcy court as a dischargability complaint based upon facts that formed the basis of state court litigation that was not completed. In that case, summary judgment was granted to King's Welding, in part, and denied as to all parties as to the other counts.

Two operative series of facts drive King's Welding's complaint. First, Rick King sold company scrap and diverted the proceeds to his wife. Second, Rick King established a competitor company, thereby diverting work from King's Welding.

Defendant filed affidavits from Rick King and his mother, Jane King, who was a 50% shareholder of King's Welding at the time of the scrap transactions. Both affidavits stated that Rick King was permitted to act in this manner with regard to the scrap. King's Welding placed nothing in the record on this point except the decision of the state court, which is not entitled to preclusive effect. The state court may have had something other than the affidavits of Rick King and Jane King, but this court does not. The state court also may not have had identical affidavits from Rick King and Jane King, but it does not matter. What matters is the record and the argument in *this* court.

As to the counts relating to Rick King stealing business from the plaintiff, Rick King again relied on his own affidavit. The affidavit states that his father returned to the business and fired or drove out so many employees that there were swaths of King's Welding's business that it no longer wanted or was no longer capable of performing. King's Welding has not directly countered this argument. King's Welding's argument is directed at pointing out that Rick King was competing with King's Welding, essentially stealing business by rigging quotes and the like, and arguing that Rick King had a hidden agenda of destroying King's Welding. This does not respond to the assertion set forth as a fact by virtue of its inclusion in an affidavit, that the transactions were work that King's Welding either did not want or was incapable of performing.

5

The court has scoured the materials filed as docket item 35 in support of King's Welding's opposition to summary judgment, some or all of which may not be submitted in a manner to be part of the legally recognized record. Putting this problem to the side, the court can create an argument from the attached portions of Rick King's deposition that could save a portion of the causes of action. The court carefully read those parts of King's Welding's brief (page 5 and page 12) citing Rick King's deposition and no such argument is made.

First, as previously noted, courts are not tasked with combing the record, and even much less so combing the record to make arguments not raised by the parties. Second, the court would be forcing tactical choices on King's Welding as such an argument would result in a much smaller cause of action for recovery. Third, this would be fundamentally unfair to Rick King, who would have no notice of the argument or an opportunity to argue against it.

On a completely different note, the status of the case is unusual in that neither side ever engaged in a count by count analysis consolidating law and facts. There are statements of fact, statements of the case, sections about applicable federal law and so on, but at no point does either brief engage in a count by count argument harmonizing the law with the facts to express the party's argument. Similarly, the parties seldom join at the intersection of an argument. This opinion reflects the ensuing struggle for the court.

### C. Count I: Breach of Fiduciary Duty and Breach of Employment Contract

The court now considers each count of the complaint under the summary judgment standard. The first count of the complaint, "Breach of Fiduciary Duty and/or Breach of Employment Contract," is really two counts rolled into one. Breach of fiduciary duty and breach of employment contract are disparate concepts and the court considers them separately.

#### 1. Breach of Fiduciary Duty

The complaint states that, as an officer and employee of King's Welding, Rick King had a fiduciary duty, which he violated by competing with his employer and by diverting funds from the sale of scrap metal. Plaintiff's response does not contain a subsection devoted to the fiduciary duty claim and does not cite cases. However, the state court cited case law that supports the position that "[a]n employee owes his or her employer a duty to act 'in the utmost good faith and loyalty toward his . . . employer.'" Berge v. Columbus Cmty. Cable Access, 736 N.E.2d 517, 549 (Ohio App. 1999) (citing Connelly v. Balkwill, 116 N.E.2d 701, 706–707 (Ohio 1954)) (ellipsis in original). The law cited by plaintiff in its response does not appear to address Rick King's status as an officer. It is mentioned in passing. This distinction, whether legally argued or not, does not matter for the reasons set forth as the undisputed factual record by Rick King as set forth below.

The court finds that Rick King was not in violation of his fiduciary duty and is entitled to summary judgment. In his motion for summary judgment, Rick King states that King's Welding

did not want and was incapable of handling the work performed by ANJ Welding and that ANJ Welding accepted the work in order to save the business relationship. Paragraph 16 of his affidavit states

> [w]ith the ongoing problems Dick King was deliberately causing regarding Plant I, I formed ANJ for purposes of being able to save the Plant I work which King's Welding no longer wanted and which it was not capable of doing. Any purchase orders and invoices concerning ANJ for welding, fabricating or machine shop work which I went through in my deposition, was for work which King's Welding was unwilling and unable to do. The formation and operation of ANJ did not conflict with King's Welding [sic] ongoing business with PCC Airfoils regarding the Parts Processing Work.

Furthermore, Rick King argues that he was vested with authority to sell the scrap metal and divert the proceeds to his wife. In support of his argument he cites his affidavit, which states that "based upon the relationship I had with Dick and Jane King regarding the company, there is no question that I was vested with the authority to direct disbursements of proceeds as I saw fit regarding the sale of scrap." (Rick King affidavit ¶ 22). Jane King was a 50% shareholder at this time and her affidavit is consistent with Rick King's. Given the parent-child relationship between Rick King and Dick and Jane King and the common insider handling of closely-held businesses, Rick King's assertion is sufficiently probable to shift the burden of proof. By citing facts in the record which support his position, Rick King has met his initial burden on his motion for summary judgment.

King's Welding cites no evidence to counter Rick King's assertions. To overcome a motion for summary judgment, the nonmovant must dispute the movant's assertion by pointing out facts in the record which support the nonmovant's claim. Celotex, 477 U.S. at 322. King's Welding has made no such showing. The findings of the state court are not evidence as they were not part of final, appealable orders. Moreover, material that may have been included, and cited to, in the state court was not brought into the record or cited from the record in this matter. Therefore, for the purpose of this motion, the court must accept the version of facts in the record. For purposes of this motion, the court finds that Rick King formed ANJ Contracting to perform work that King's Welding was unwilling or unable to perform and that he was authorized to divert the scrap metal proceeds. As such, Rick King was not in violation of his fiduciary duty.

Even if King's Welding had established a claim for violation of Rick King's fiduciary duty, it would not be entitled to a finding of nondischargability under subsections 523(a)(2), (4) or (6). Section 523(a)(2) states that "this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ." The court has found for the purpose of this motion that Rick King was authorized to redirect the scrap proceeds and formed ANJ Contracting to perform work that King's Welding was unwilling or unable to

7

perform. Therefore, Rick King had no fraudulent intent and did not engage in "false pretenses, a false representation, or actual fraud . . . ."

The section 523(a)(4) claim must fail as well. Section 523(a)(4) states that "this title does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ." As discussed, for the purpose of this motion, Rick King did not engage in fraud, defalcation, embezzlement or larceny. Finally, the section 523(a)(6) claim must fail. Section 523(a)(6) states that "this title does not discharge an individual debtor from any debt obtained by . . . willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." As discussed, for the purpose of this motion, Rick King's motives were not malicious.

Accordingly, the motion for summary judgment on the breach of fiduciary duty claim is granted.

### 2. Breach of Contract

Under Ohio law, the elements of a breach of contract claim are (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the plaintiff and (4) resultant damages. Doner v. Snapp, 649 N.E.2d 42, 44 (Ohio Ct. App. 1994). On September 9, 1996, Rick King signed a contract titled "Terms of Employment," attached to King's Welding's response as Exhibit D. Paragraph 4 of the contract states in pertinent part, "I agree that, during the term of my employment with the Company, I will not engage in any other employment . . . or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of my employment . . . ." Rick King allegedly violated his contract when he solicited PCC Airfoils' business.

The court finds that summary judgment is appropriate on the contract claim because King's Welding suffered no damages due to Rick King's alleged conduct. As discussed, Rick King's affidavit states that King's Welding was unable and unwilling to do the work in question. King's Welding cites no evidence to the contrary in the record. Therefore, King's Welding cannot meet the "resultant damages" element of a breach of contract claim. In addition, for the reasons discussed under Count I, King's Welding is not entitled to a finding of nondischargability under subsections 523(a)(2), (4) and (6).

Accordingly, summary judgment on King's Welding's claim for breach of contract is granted.

### D. Count II: Trade Secret Act

The complaint alleges in a generic way that Rick King misappropriated trade secrets consisting of "processes, formularies, and techniques" as well as "customer lists and pricing information." In his motion for summary judgment, Rick King states that no such trade secrets

8

exist. (Motion at 10). Under the summary judgment standard, Rick King's declaration that no such secrets exist shifts the burden to King's Welding to specifically point out credible evidence showing the existence and misappropriation of trade secrets. Celotex Corp., 477 U.S. at 322.

In response, King's Welding points out no such evidence. King's Welding does not identify trade secrets or explain how the alleged misappropriation occurred. Instead, King's Welding identifies documents that prohibit Rick King from misappropriating trade secrets. However, these documents are not material as to whether trade secrets actually existed or were misappropriated. To defeat a motion for summary judgment, a party must cite material evidence. Anderson, 377 U.S. at 248.

Plaintiff's argument on this point is particularly disjointed as it is discussed in multiple places in its response without being unified and harmonized in any manner. (*See* Response at 9, 15). To the extent that the argument is that pricing or related sales and marketing information was a trade secret, plaintiff has pointed to no evidence in the record contradicting Rick King's affidavit that the work he took was work plaintiff was unable or unwilling to perform. This fact means plaintiff failed to meet the third element of its cause of action as set out by it on page 15 of its response. The court also finds that King's Welding is not entitled to a finding of nondischargability. It is impossible to conclude that subsection 532(a)(2), (4) or (6) is applicable given that the underlying cause of action for trade secrets fails.

Accordingly, the motion for summary judgment with regard to Ohio's Trade Secret Act is granted.

### E. Count III: Tortious[1] Interference with a Business Relationship

To prove tortious interference with a business relationship, a plaintiff must prove the following five elements: (1) an existing or prospective business relationship between the plaintiff and a third party; (2) the defendant knew of the business relationship; (3) the defendant acted with the purpose or intent to interfere with plaintiff's business relationship; (4) the defendant lacked a justification or privilege and (5) the defendant was injured as a proximate or direct result of the acts of the plaintiff. A&B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. and Trades Council, 651 N.E.2d 1283, 1294–96 (Ohio 1995); Ohio Jury Instruction CV 453.01.

The court has found that King's Welding was not injured because it lacked the capacity to do the work. This would also constitute acting without the purpose or intent to injure. Therefore, the claim for tortious interference with a business relationship must fail. Furthermore, for the reasons discussed with regard to Count I, King's Welding is not entitled to a finding of nondischargability under subsections 523(a)(2), (4) and (6).

---

[1]Reference is made to tortuous interference with a business relationship. This cause of action is based upon conduct that is a tort. Thus, it is tortious not tortuous.

9

Accordingly, the motion for summary judgment is granted with regard to King's Welding's claim for tortious interference with a business relationship.

*F. Count IV: Conversion*

To prove conversion, a plaintiff must show the following three elements: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's wrongful disposition of plaintiff's property rights and (3) damages. L&N P'ship v. Lakeside Forest Assoc., 916 N.E.2d 500, 506 (Ohio Ct. App. 2009). The court has already found that for the purposes of this motion, Rick King was authorized to retain or direct the proceeds of the scrap metal sale. As such, it was not wrongful. Furthermore, for the reasons discussed with regard to Count I, King's Welding is not entitled to a finding of nondischargability under subsections 523(a)(2), (4) and (6).

Accordingly, the motion for summary judgment with regard to King's Welding's claim for conversion is granted.

*G. Count V: Fraud*

The complaint relies on a theory of fraudulent misrepresentation. The elements of the tort of fraudulent misrepresentation are: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." Burr v. Bd. of County Comm'rs, 491 N.E.2d 1101, 1105 (Ohio 1986).

Rick King states that this is "not a fraud case . . . ." (Motion at 18). The court agrees. The fraud count relies upon the operative facts of stealing scrap and diverting business. As the court has discussed, for the purpose of this motion the court has found that Rick King had no fraudulent intent. Furthermore, no version of the facts suggests how King's Welding relied on Rick King's conduct. Perhaps plaintiff means to argue silent fraud. Fraud must be pleaded with particularity. Fed. R. Civ. Pro. 9(b). Neither the complaint nor the plaintiff's brief at any point makes such an argument. Furthermore, for the reasons discussed with regard to Count I, King's Welding is not entitled to a finding of nondischargability under subsections 523(a)(2), (4) and (6).

Accordingly, the motion for summary judgment with King's Welding's fraud claim is granted.

*H. Count VI: Attorney Fees*

Count VI is a request for attorney fees made pursuant to Federal Rule of Civil Rule of Civil Procedure 7008(b), which provides that "[a] request for an award of attorney's fees shall be pleaded as a claim in a complaint . . . ." In this case, no reason exists to deviate from the default position that each party bear its own attorney fees. Moreover, plaintiff succeeded on none of its claims.

Accordingly, the motion for summary judgment is granted with regard to attorney fees.

An order will issue with this opinion.

\#   \#   \#

**Service List:**

Alfred D McCallin
116 Cleveland Ave NW
500 Courtyard Ctr
Canton, OH 44702-1423

Robert J Tscholl
400 South Main Street
North Canton, OH 44720

James R Kandel
101 Central Plaza S
Ste 1003
Canton, OH 44702-1433

Wallace W. Walker, Jr., Esq.
7774 Oakhurst Cir
Brecksville, OH 44141